Edward Wall, Sr. v. Commissioner.
Wall v. Comm'r
Docket No. 19440.
United States Tax Court
1950 Tax Ct. Memo LEXIS 216; 9 T.C.M. (CCH) 339; T.C.M. (RIA) 50103; April 18, 1950
*216 E. P. Whiting, Esq., Dexter Horton Bldg., Seattle, Wash., for the petitioner. William E. Koken, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined deficiencies in petitioner's income taxes and asserted penalties for 1944 and 1945, as follows: 50%
Year
Deficiency
penalty
6% penalty
1944
$1,777.71
$ 888.86
1945
2,211.69
1,105.85
$143.74
The questions presented are: (1) did the respondent err in disregarding the books and records of Brittania Tavern, a partnership in which petitioner was an equal partner with Charles Sands, and in determining petitioner's income for 1944 and 1945 on the basis of the increase in his net worth during those years; (2) are the deficiencies for 1944 and 1945 due in whole or in part to fraud with intent to evade taxes; and (3) did the petitioner substantially (to the extent of more than 20 per cent) understate his income tax for 1945 in his declaration of estimated tax. Findings of Fact The case was submitted on a partial stipulation of facts. The stipulated facts are so found and are incorporated herein by reference. The petitioner is an individual *217 residing in Seattle, Washington. His income tax returns for 1944 and 1945 were filed with the collector for the district of Washington. Petitioner and Charles Sands were equal partners in a beer tavern in Seattle, the business operating under the name of Brittania Tavern. Their written partnership agreement was as follows: "Subject to the conditions, requirements, and limitations hereinafter particularly enumerated, C. SANDS and EDWARD WALL do hereby join and establish themselves together as partners for the purpose of carrying on and conducting a business of a beer parlor and tavern at First Avenue, and Yesler Way, being on the ground floor of what is known as the Mutual Life Building, in the City of Seattle, Washington. "The undersigned Sands has provided the funds amounting to Forty-two Hundred Dollars ($4200.00) for the purpose of acquiring the liquor permit from the Washington State Liquor Board covering said premises by way of assignment from the previous owners and approval by the State Liquor Control Board, also the furniture, furnishings, and equipment presently installed upon said premises, as well as the negotiation and procurement of a lease from the Shafter Bros. *218 Land Company, the owners of said Mutual Life Building, as well as other expense incident to said purchase. It may appear that the said Sands has expended slightly more than the sum of $4200.00. It is the intention of the undersigned that they will conduct and carry on the business of a beer parlor and tavern upon said premises. "It is understood that Mrs. Philomena Sands will have the right to operate the lunch counter area upon said premises, and shall have the right to use any equipment on the premises ordinarily used in the operation of the lunch counter, as long as she may desire to operate the same, and while the partners are engaged in business there, it being understood that she will pay Fifty Dollars ($50.00) a month for the said privilege. "When and as the undersigned Edward Wall shall pay to the undersigned Charles Sands the sum of Twenty-one Hundred Dollars ($2100.00), the said Wall shall become an owner of an undivided one-half interest in the said business and the equipment and all things pertaining to and used in said business, and necessary and essential to the operation thereof; that Five Hundred Dollars ($500.00) of said $2100.00 has been paid by the said Wall *219 to the said Sands, and the balance of Sixteen Hundred Dollars ($1600.00), together with interest thereon at the rate of 3 percent per annum, computed on balances, shall be paid by the said Wall to the said Sands at the rate of Ten Dollars or more per week the full amount to be paid on or before one year after date. It is understood that the payment of the full amount of $2100.00 shall be a condition precedent to a vesting of any of the property above described in the said Wall. "It is understood that the interests of the respective parties hereto in the selling price of everything involved as above recited, in the event of a sale prior to the time that said Wall pays the said Sands the sum of $2100.00 and interest, shall be apportioned and computed on the basis of the respective capital investments on the part of each of the partners, provided that the said Wall shall always be entitled to ten (10) days to bring up the amount of his investment to equal the amount of the investment of the said Sands in the event of a contemplated sale. "Any and all cash receipts from the operation of the business, aside from monies necessary to pay operational costs on the premises, and withdrawals *220 for compensation of the partners, shall be deposited in the Bank and shall be subject to withdrawal by check, and all checks shall be signed by both of the undersigned parties. "DATED at Seattle, Washington, in duplicate this 11 day of January, 1944. "/s/ Edward Wall "/s/ C. Sands" Sands advanced the money for purchase of the furnishings, equipment, and other items constituting the assets used in the partnership business. Petitioner contracted to make certain payments for his one-half interest in the business to Sands during the years 1944 and 1945. The contract also provided that payment in full of $2,100 to Sands was a condition precedent to the vesting of title to any of the partnership property in petitioner Wall. Petitioner made no payments to Sands during the year 1944 for his one-half interest in the partnership assets and acquired no title thereto during the year 1944. Some time during 1945 petitioner did pay to Sands $2,140 for a one-half interest in the furnishings, equipment, and assets of the partnership. Partnership returns were filed on behalf of Brittania Tavern for 1944 and 1945 with the collector for the district of Washington. The partnership had commenced *221 business on about January 11, 1944, and reported net income for that year of $6,660.35. It reported net income for 1945 in the sum of $7,517.53. The petitioner in his individual income tax returns for 1944 and 1945 reported that the partnership, Brittania Tavern, was his sole source of income and that he received one-half of the net income set forth in the partnership return, amounting to $3,330.18 and $3,758.77, respectively. Respondent investigated the books and records of Brittania Tavern and as a result of the investigation concluded that said books and records are inadequate and incomplete and do not properly reflect the income of the partnership or of the petitioner. He thereupon investigated petitioner's bank accounts and the bank account of the partnership and determined petitioner's income and resulting taxes on the so-called net worth basis. On this basis the respondent determined the petitioner's net adjusted income for 1944 to be $9,434.34 and for 1945 to be $10,880.23, and determined deficiencies and penalties as hereinabove set forth. The petitioner kept no books during the taxable years involved other than the partnership books. These books do not itemize receipts; *222 neither do they itemize the greater part of expenditures. The entries were supposedly made in the books either at the end of a day's business or at the end of a week's business and were allegedly made from cash register slips and receipts for bills paid during the day or week. Pages had been cut from the books at various places and no explanation was offered for their condition. The books are incomplete, inadequate, and unsatisfactory, and do not reflect the true income of either the partnership or the petitioner for the taxable years 1944 and 1945. Exclusive of any interest in the partnership fixtures, equipment, and assets, the petitioner had assets at the beginning and close of the years 1944 and 1945 as follows: 12-31-43 and
12-31-44 and
1-1-44
1-1-45
12-31-45
Checking account Seattle First National Bank, Main
Branch
$ 737.10
Savings account No. XXXX, Seattle First National Bank,
Seaboard Branch
$1,878.14
$5,819.87
9,462.48
Checking account Brittania Tavern, Peoples National
Bank of Washington, First Avenue Branch (1/2 in-
terest)
1,300.25
1,020.05
Brittania Tavern automobile (1/2 interest)
500.00
$1,878.14
$7,120.12
$11,719.63
*223 Petitioner's increase in net worth during 1944 was $5,241.98 and his increase in net worth during 1945 was $4,599.51. Petitioner's living expenses during 1944 amounted to $750, and he paid income taxes amounting to $592.36. During 1945 petitioner withdrew $4,000 from his checking account in Seattle First National Bank, Main Branch, which was used to pay $2,140 to Sands for a one-half interest in the assets of Brittania Tavern, income taxes amounting to $580.72, and living expenses and other nondeductible expenses amounting to $1,279.28. Petitioner's taxable income for 1944 and 1945, computed on an increase of assets and net worth basis, was as follows: 1944
1945
Yearly increase in net worth, exclusive of interest in Brittania
Tavern partnership
$5,241.98
$4,599.51
Estimated living and other nondeductible personal expenses
750.00
1,279.28
Income taxes paid
592.36
580.72
Amount paid to Charles Sands for 1/2 interest in Brittania Tavern
2,140.00
Net adjusted income
6,584.34
8,599.51
Petitioner knew that the books and records of Brittania Tavern and his income tax returns for 1944 and 1945 did not properly reflect the income received by him *224 during those years. The understatements of taxable income in petitioner's returns for 1944 and 1945 were false and fraudulent with intent to evade the payment of part of his income taxes due the Federal Government for each of those years. Petitioner's estimate of income tax in his declaration of estimated tax for 1945 was less than 80 per cent of the income tax herein determined. Opinion LeMIRE, Judge: The first question to be determined is whether the respondent erred in disregarding the partnership books of Brittania Tavern and in determining petitioner's income on the so-called increase of assets and net worth basis. The petitioner contends that his sole source of income was from the partnership, Brittania Tavern, and that the books of the partnership reflect all of his income, as shown by his income tax return for the years in question. The respondent contends that the partnership books were incomplete and inadequate, and do not reflect petitioner's income for those years. He maintains that the petitioner's net worth, as shown by bank accounts and other evidence, plus living expenses, federal income taxes, and other nondeductible personal expenses paid out of income during *225 these years, show that the petitioner's income was more than double the amount shown by the partnership books or reported in his returns for these years. Respondent further maintains that his method of computation does clearly reflect petitioner's income and is authorized by the Internal Revenue Code. In accordance with our findings of fact herein, we sustain the respondent's contention and hold that he rightfully disregarded the partnership books and determined petitioner's income on the basis of his increase in assets and net worth, as shown by bank accounts and other evidence. Harris v. Commissioner, 174 Fed. (2d) 70. We found as a fact that respondent erred in including as one of petitioner's assets in 1944 a one-half interest in the fixtures, equipment, and other assets of Brittania Tavern. The contract between petitioner and Sands specifically provided that the title to this interest could not vest in petitioner until the sum of $2,100 had been fully paid by him to Sands. The evidence is that nothing was paid until some time during the year 1945, when the whole amount, totaling $2,140, was paid. We also found that the respondent erred in determining that the petitioner *226 paid out of income $1,600 as living expenses for the year 1944. The evidence is that petitioner lived very frugally, and that all his living expenses for that year amounted to $750. We therefore hold that the petitioner had net adjusted income for the year 1944 in the sum of $6,584.34. We have also found that exclusive of his partnership interest in Brittania Tavern there was an increase in petitioner's assets and net worth during the year 1945 of $4,599.51. We further found that the Commissioner erred in adding to the taxable income the sum of $4,000 in unexplained withdrawals from petitioner's checking account and in estimating living expenses at $1,800 and federal income taxes at $580.72. We found, on the evidence, that $2,140 of the above-mentioned withdrawal was in 1945 paid to Sands under the partnership contract for a one-half interest in Brittania Tavern's fixtures, equipment, and miscellaneous assets, and that the remainder of the $4,000 withdrawal was used for the payment of $580.72 federal income taxes and $1,279.28 living and other nondeductible expenses. We held, therefore, that petitioner's net adjusted income for the year 1945 was $8,599.51. The second question *227 for our determination is whether the understatements of income made by petitioner in his 1944 and 1945 returns were false and fraudulent with intent to evade income taxes. The evidence shows an understatement of almost 100 per cent for the year 1944 and of more than 100 per cent for the year 1945. The petitioner was aware of the size of his bank accounts at the time he made his returns. The only explanation offered in his behalf is that from time to time customers left money with him for safe-keeping, which he deposited in his personal bank accounts from time to time, and which he later repaid to them from his bank accounts. This testimony is contradicted by the bank deposit records. Only a few withdrawals of funds were made from petitioner's savings account with the Seaboard Branch of the Seattle National Bank during the first six months of 1944. There was not a single withdrawal of cash from that account during the last six months of 1944, or during the entire year of 1945. The evidence is that there were but few withdrawals from petitioner's checking account with the main office of the Seaboard First National Bank between April 10, 1945, when the account was opened, and December 31, 1945. Only *228 minor withdrawals shortly after the account was opened, and December 31, 1945. Only minor withdrawals shortly after the account was opened are unexplained. That account could not have been used for the purposes suggested by the petitioner. Petitioner was undoubtedly aware of the payment of his taxes and living expenses and of the payment for his one-half interest in the partnership assets. He was aware of the increase in his and the partnership bank accounts. He knew the bank accounts showed income each year in excess of the amount reported in his returns. He has offered no plausible explanation of this difference between the amount of income indicated by his bank accounts and the amount reported in his returns. The respondent has sustained his burden of proof that all or some part of the deficiency for each year is due to fraud with intent to evade tax. We conclude that in each of the years 1944 and 1945 petitioner filed a false and fraudulent income tax return with intent to evade tax. The 50 per cent fraud penalties for 1944 and 1945 were properly imposed by respondent under section 293(b), Internal Revenue Code. The third question is whether the petitioner *229 in his declaration of estimated tax for the year 1945 understated his tax liability more than 20 per cent and is, therefore, liable for the six per cent penalty provided by section 294(d)(2) of the Internal Revenue Code. We have found as a fact that petitioner's tax in his estimated return for 1945 was less than 80 per cent of the tax due, as herein determined, and we therefore find that the six per cent penalty of section 294(d)(2), Internal Revenue Code, should be added to the tax. Decision will be entered under Rule 50.